UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID ORTIZ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 9228 |
| v. | ) | |
| | ) | Judge George M. Marovich |
| BOARD OF EDUCATION OF | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Ortiz ("Ortiz") has filed against the Board of Education of the City of

Chicago a second-amended complaint in which he asserts a claim under the Americans with

Disabilities Act ("ADA"). Defendant moves to dismiss the case on the grounds that Ortiz failed

to exhaust his administrative remedies. For the reasons set forth below, the Court denies

defendant's motion.

## I.    Background

For purposes of this motion to dismiss, the Court takes as true the allegations in Ortiz's

second-amended complaint and the documents attached thereto. Fed.R.Civ.P. 10(c). The Court

also considers the Charges of Discrimination that Ortiz filed with the Illinois Department of

Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC")

(which charges defendant attached to its motion to dismiss), because Ortiz referred to them in his

second-amended complaint. *Equal Employment Opportunity Comm'n v. Concentra Health

Services, Inc.*, 496 F.3d 773, 778 (7th Cir. 2007) (document attached to motion to dismiss is

considered part of the pleadings where the document is referred to in the complaint and is central

to the plaintiff's claim).

Defendant Board of Education of the City of Chicago (the "Board") employed plaintiff Ortiz for more than sixteen years. During that time, Ortiz worked as a Parent Advocate at Sawyer Elementary School. As Parent Advocate, Ortiz was responsible for supervising the safety of school staff and students and for monitoring students.

Ortiz has a major depressive disorder. Over the years, he has informed the school about it. For example, in 1995, after the death of Ortiz's mother, Ortiz informed Gerard Gliege (who was, at the time, the acting assistant principal) that he was seeking medication for his depression. In or about August 2008, Ortiz informed Nellie Robles ("Robles"), the school's principal, that he was depressed about his divorce.

In the year 2010, Ortiz continued to suffer from depression. On or about March 15, 2010, Ortiz told a co-worker that he was suicidal. That co-worker told Robles, who authorized the co-worker to take Ortiz to the hospital for treatment.

Ortiz was admitted to the hospital for a week. After his release, Ortiz attempted suicide by swallowing a large quantity of prescription medication. Ortiz ended up back in the psychiatric hospital until he was released on or about March 29, 2010. Upon his release, Ortiz was prescribed a cocktail of drugs, including Lithium, Wellbutrin, Abilify and Zoloft. He alleges that these drugs caused him to behave abnormally.

Ortiz was due back at work on April 5, 2010. On April 4, 2010, Ortiz drank alcohol during the day, but he stopped that evening. When Ortiz went to work on April 5, 2010, he brought with him to work a package of raw steak and a four-pack of unopened bottles of Mike's Hard Lemonade (an alcoholic beverage). Principal Robles called Ortiz into the office and informed him that he would be tested for drugs and alcohol, because he smelled of alcohol.

Ortiz took a Breathalyzer test, and Ortiz alleges that defendant believed the test to be positive. Robles sent him home and, ultimately, suspended his employment.

After he was sent home, Ortiz informed his psychiatrist that he was concerned about his behavior. The psychiatrist reduced Ortiz's doses of several of the medications and took Ortiz off the Lithium entirely. Within about three and a half weeks, Ortiz stabilized and felt that the behavioral effects of the prior drug cocktail had diminished.

On June 29, 2010, Ortiz filed a Charge of Discrimination with the IDHR and the EEOC. His Charge stated:

> I.  A.  ISSUE/BASIS
>     SUSPENSION–MAY 11, 2010, BASED ON MY MENTAL
>     DISABILITY, DEPRESSION
>     B.  PRIMA FACIE ALLEGATIONS
>         1.  I am an individual with a mental disability as defined
>             within Section 1-103(I) of the Illinois Human Rights Act.
>         2.  Respondent has knowledge of my disability.
>         3.  I began my employment with Respondent in September
>             1993. My work performance as a security officer at
>             Sawyer Elementary School meets Respondent's legitimate
>             expectations.
>         4.  On May 11, 2010, Nellie Robles, Principal, suspended me
>             with intent to discharge me. The reason given by Robles
>             for suspending me was that I came to work under the
>             influence.
>         5.  My disability is unrelated to my ability to perform the
>             essential functions of my job duties.

(June 29, 2010 Charge).

On August 26, 2010, the Board terminated Ortiz's employment. Ortiz filed another Charge of Discrimination on September 27, 2010. This time, Ortiz alleged:

> I.  A.  ISSUE/BASIS
>     INDEFINITE SUSPENSION, MAY 6, 2010, BECAUSE OF MY
>     MENTAL DISABILITY, DEPRESSION.
>     B.  PRIMA FACIE ALLEGATIONS

1. I am an individual with a disability as defined under Section 1-103(I) of the Human Rights Act.
2. Respondent has knowledge of my condition.
3. On or about May 6, 2010, I was notified by Ron Huberman, Respondent's Chief Executive Officer, that I was being suspended. Huberman's letter states that I was being suspended, but failed to state a reason as to why.
4. My disability does not affect my ability to perform the essential duties of my job, with reasonable accommodations.

II. A. ISSUE/BASIS
DISCHARGE, AUGUST 30, 2010, BECAUSE OF MY MENTAL DISABILITY, DEPRESSION.

B. PRIMA FACIE ALLEGATIONS
1. I am an individual with a disability as defined under Section 1-103(I) of the Human Rights Act.
2. Respondent has knowledge of my condition.
3. On or about August 30, 2010, I was notified by Ron Huberman, Respondent's Chief Executive Officer that I was being discharged. Huberman's letter states that I was being discharged, but failed to state a reason as to why.
4. My disability does not affect my ability to perform the essential duties of my job, with reasonable accommodations.

III. A. ISSUE/BASIS
DISCHARGE, AUGUST 30, 2010, IN RETALIATION FOR OPENLY OPPOSING DISABILITY DISCRIMINATION.

B. PRIMA FACIE ALLEGATIONS
1. On or about June 29, 2010, I engaged in a protected activity when I filed discrimination charge number 2010CF4054 against Respondent with the Department of Human Rights.
2. On or about August 30, 2010, I was notified by Ron Huberman, Respondent's Chief Executive Officer that I was being discharged. Huberman's letter states that I was being discharged, but failed to state a reason as to why.
3. Respondent's adverse action follows my protected activity within such a period of time as to raise an inference of retaliatory motivation.

(September 27, 2010 Charge).

On December 28, 2011, Ortiz filed suit in this court. In his second-amended complaint,

Ortiz does not allege that he was discriminated against on the basis of his disability when he was

suspended and discharged.  Ortiz does not allege that he was retaliated against for having filed a

charge of discrimination.  Instead, Ortiz alleges that defendant violated the ADA by failing to

provide a reasonable accommodation.  Ortiz alleges that had the Board given him more time off

to adjust to his cocktail of prescription drugs, he would not have been at work on April 5, 2010

and, therefore, would not have brought raw steak and an alcoholic beverage to work.

Defendant moves to dismiss on the grounds that Ortiz failed to exhaust his administrative

remedies with respect to his claim that the defendant failed to provide a reasonable

accommodation.

## II.    <u>Standard on a motion to dismiss</u>

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure if the plaintiff fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P.

12(b)(6).  In considering a motion to dismiss, the Court accepts as true all well-pleaded factual

allegations and draws all reasonable inferences in the plaintiff's favor.  *McCullah v. Gadert*, 344

F.3d 655, 657 (7th Cir. 2003).

Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a

complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v.

Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need not provide detailed factual allegations, but

mere conclusions and a "formulaic recitation of the elements of a cause of action" will not

suffice.  *Bell Atlantic*, 127 S.Ct. at 1964-1965.  A complaint must include enough factual

allegations to "raise a right to relief above a speculative level."  *Twombly*, 127 S.Ct. at 1965.

"After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases

for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S.Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## III.   Discussion

The ADA sets out administrative requirements that must be met before one may file a discrimination complaint in federal court. 42 U.S.C. §§ 2000e-5, 12117(a). The Supreme Court has explained that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002) (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)). "[P]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Threadgill v. Moore U.S.A.*, 269 F.3d 848, 851 (7th Cir. 2001) (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)).

Among the procedural requirements is the requirement that a plaintiff must first file a charge of discrimination with the EEOC. A court may review only "those charges 'included in [the] EEOC charge ... or reasonably related to the allegations of the charge and growing out of

such allegations.'" *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir. 2004)

(quoting *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 689 (7th Cir. 2001)).

Defendant moves to dismiss Ortiz's complaint on the grounds that plaintiff's claim for

failure to accommodate was not included in his charge of discrimination. *Green v. National*

*Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999). In *Green*, the Seventh Circuit rejected the

argument that a plaintiff could file a claim for failure to accommodate after failing to mention

the claim in an EEOC charge. The Seventh Circuit explained:

> As we have previously stated, a failure to accommodate claim is separate and
> distinct from a claim of discriminatory treatment under the ADA. In fact, the two
> types of claims are analyzed differently under the law. Therefore, they are not
> like or reasonably related to one another, and one cannot expect a failure to
> accommodate claim to develop from an investigation into a claim that an
> employee was terminated because of a disability.

*Green*, 197 F.3d at 898 (internal citations omitted); *see also Ortiz v. Elgin Sweeping Services,*

*Inc.*, Case No. 10 C 936, 2010 WL 3034633 at *2 (N.D. Ill. July 29, 2010) ("Failure to

accommodate claims are as a matter of law separate and distinct from discriminatory discharge

claims–these claims are therefore not reasonably related to one another, nor is it expected that

one of these claims would develop from an investigation into the other.").

It is clear that Ortiz did not explicitly include in his charges a claim for failure to provide

a reasonable accommodation. In his first charge, Ortiz asserted a disparate treatment claim by

charging that he was suspended on May 11, 2010, based on his mental disability. In his second

charge, Ortiz asserted three claims: (1) that he was suspended on May 6, 2010, because of his

mental disability; (2) that he was discharged on August 30, 2010, because of his mental

disability; and (3) that he was discharged on August 30, 2010 in retaliation for having filed the

first charge of discrimination. When he filed his second-amended complaint in federal court,

however, Ortiz dropped his disparate treatment claims.  (This probably made sense.  Discharging an employee for inappropriate conduct–even when the conduct is caused by a disability–does not violate the ADA.  *Pernice v. City of Chi.*, 237 F.3d 783, 785 (7th Cir. 2001) ("It is well-established that an employee can be terminated for violations of valid work rules that apply to all employees, even if the employee's violations occurred under the influence of a disability."); *Palmer v. Circuit Court of Cook Cty.*, 117 F.3d 351, 352 (7th Cir. 1997) ("But if an employer fires an employee because of the employee's unacceptable behavior, the fact that that behavior was precipitated by a mental illness does not present an issue under the Americans with Disabilities Act.").)  Instead, Ortiz filed a claim for failure to provide a reasonable accommodation, which he had not explicitly included in his charges of discrimination.

Ortiz argues that his claim for failure to provide a reasonable accommodation is reasonably related to the disparate treatment claims he asserted in his charges of discrimination. For example, Ortiz argues that he "stated *twice* in Charge 2 that he is able to perform the essential duties of his job with reasonable accommodations."  That is beside the point.  With respect to the first two claims in his second charge, Ortiz asserted that his "disability does not affect my ability to perform the essential duties of my job, with reasonable accommodations." Such a statement is not an accusation that defendant failed to provide a reasonable accommodation.  Rather, it is an essential element of his disability discrimination claim.  The ADA prohibits discrimination only against a "qualified individual," which is to say one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. §§ 12111(8); 12112(a). Thus, the inclusion of those words in his charge does not mean Ortiz's federal claim for failure

to provide a reasonable accommodation was reasonably related to his charge; it merely means he properly alleged in his charge that he was qualified for protection under the ADA.

Ortiz also argues that his failure to accommodate claim is reasonably related to his disparate treatment charges, because he believes that if defendant had provided a reasonable accommodation (apparently, in the form of additional time off before his return to work), he would not have brought an alcoholic beverage to work with him. A few district courts have distinguished *Green* and concluded that a failure to accommodate claim was reasonably related to a disparate treatment claim where (a) a plaintiff was discharged for failing to return to work and (b) time away from work was exactly the accommodation the plaintiff had sought. *Wamack v. Windsor Park Manor*, 836 F. Supp.2d 793, 798-799 (N.D. Ill. 2011); *Davis v. American Drug Stores, Inc.*, Case No. 01 C 3704, 2003 WL 21149063 at *3 (N.D. Ill. May 19, 2003); *but see Mitchell v. Elkay Mfg. Co.*, Case No. 04 C 7808, 2005 WL 3560686 at *3 (N.D. Ill. Dec. 22, 2005). This case is somewhat similar to *Wamack* and *Davis*. Here, Ortiz alleges that he would not have been fired had the accommodation he wanted–more time off to get used to his prescription cocktail–been granted. Although it is a close call, it is not unreasonable to think an investigation into Ortiz's termination would grow into an investigation of the alleged failure to provide a reasonable accommodation.

Accordingly, the Court concludes that plaintiff has exhausted his administrative remedies, and defendant's motion to dismiss is denied.

## IV.  Conclusion

For the reasons set forth above, the Court denies defendant's motion to dismiss plaintiff's complaint.

ENTER:

*George M. Marovich*

_____

George M. Marovich
United States District Judge

DATED:  July 2, 2013