**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **DAVID J. ORTIZ,** | |
| **Plaintiff,** | **Civil Action No.: 11-CV-09228** |
| **vs.** | **Hon. Judge George Marovich** |
| **BOARD OF EDUCATION OF**<br>**CITY OF CHICAGO,** | **Hon. Magistrate Judge Young Kim** |
| **Defendant.** | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Federal law does not allow the Board of Education for the City of Chicago ("Defendant" or "Board") to remain willfully blind to the needs of employees with severe mental disabilities. The Board claims that its termination of Plaintiff David Ortiz was based on a desire to ensure school safety, but if it were truly concerned with school and employee safety, it would have worked to ensure that Mr. Ortiz—who had to return to work only days after checking out of a psychiatric hospital on a cocktail of four different prescription drugs—was stabilized before he ever returned to work. In fact, Plaintiff's former supervisor, Sawyer School Principal Nelly Robles, agrees that employees suffering mental disability issues like Plaintiff here should, for their own safety as well as that of the school, be accommodated by a policy that requires the

employee to provide a "return to work" note from a doctor or psychiatrist before returning to work after suffering severe mental illness symptoms.[1]

In contrast to the school principal, who clearly recognizes the benefit of the accommodation that should have been extended to Mr. Ortiz, the Defendant Board continues to insist that it has no obligation to engage in an interactive reasonable accommodation process with an employee suffering from crippling depression even when it is indisputably aware of the employee's disability and symptoms. The Board's position is irresponsible—but more importantly, it is legally untenable.

As discussed below, when an employer is on notice of an employee's disability, that knowledge triggers a legal obligation for the employer to engage in an "interactive process" with the disabled employee, particularly in circumstances where the employee may be unable to expressly request or describe his or her necessary accommodation.[2] Here, the existence of Plaintiff's disability, Defendant's knowledge of Plaintiff's disability, and Defendant's failure to act are uncontroverted.[3] Therefore, the Court should not only deny Defendant's motion for summary judgment, but it should also grant summary judgment *for Plaintiff* on the issue of liability. FED. R. CIV. P. 56(f)(1) (permitting the court to grant summary judgment for the non-movant).

---

[1] Plaintiff's Local Rule 56.1 Statement of Additional Material Undisputed Facts ("ASOF") ¶ 14 (Robles Tr. 73:6-15: Q. In your personal opinion, someone suffering from those symptoms, do you think that they should have a return to work note just like those that have FMLA leave? A. Absolutely. Q. And that's because a return to work note in those kind of circumstances would be best for the person's safety and for the safety of everyone at the school; right? A. Correct.).

[2] *See Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1286 (7th Cir. 1996); *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789 (7th Cir. 2005).

[3] To prevail on a claim of liability against the Defendant for Defendant's failure to accommodate, Plaintiff must prove show: "(1) [he] is a qualified individual with a disability; (2) the employer was aware of [his] disability; and (3) the employer failed to reasonably accommodate the disability." *Sears*, 417 F.3d at 797.

In support of its motion for summary judgment, Defendant presents three arguments, none of which are persuasive. First, Defendant argues that Plaintiff's failure to accommodate claim exceeds the scope of his administrative charges. Defs' Mem. in Supp. of Its Mot. for Summ. J. ("Def. Br."), ECF No.101, at 6-9 (N.D. Ill. April 29, 2014). This is *exactly* the same legal argument that the Court rejected at the motion to dismiss stage. Nothing has changed—legally or factually—since the Court's opinion denying Defendant's motion to dismiss. Indeed, further investigation and discovery has only confirmed the Court's earlier reasoning that "it is not unreasonable to think an investigation into Ortiz's termination would grow into an investigation of the alleged failure to provide a reasonable accommodation." Memorandum and Order, ECF No. 68, at 9 ("Order") (N.D. Ill. July 9, 2013).

Second, Defendant asserts that Mr. Ortiz is not a "qualified individual" under the ADA because he (allegedly) could not perform the essential job functions of his position *without* accommodation. Def. Br. at 9-11. However, that is not the correct standard of law; the proper inquiry is whether Plaintiff can perform the essential functions of his job *with or without* reasonable accommodation.

Lastly, the Board argues that it is not liable for its failure to accommodate Mr. Ortiz because he never expressly requested a "reasonable accommodation." Def. Br. at 11-14. Under the facts of this case, Defendant's position is contrary to the binding law of this Circuit.

## SUMMARY OF FACTS

Plaintiff David Ortiz suffers from Major Depressive Disorder and has attempted suicide several times. ASOF ¶ 1. Mr. Ortiz first informed Defendant that he suffered from severe depression in 1995 or 1996. *Id.* at ¶ 5. Before his termination, Mr. Ortiz had worked as a Parent

Advocate at Sawyer Elementary School for over seventeen years. *Id.* at ¶ 3. In addition to his primary duties, Plaintiff also managed two school clubs during his employment. *Id.* at ¶ 4.

His employer knew of his mental illness. *Id.* at ¶¶ 5-6. In fact, the evidence establishes that Mr. Ortiz had long been providing his superiors with information regarding his condition—and even the medications he was prescribed. *Id.* at ¶ 5. On March 8, 2010, Mr. Ortiz told a fellow employee, Tom O'Connell, that he was feeling suicidal and he "didn't want to go on." ASOF ¶ 6. The school principal, Nelly Robles, agreed to let Mr. O'Connell take Mr. Ortiz from school to the psychiatric ward of Christ Hospital. *Id.* at ¶ 7. After he was picked up from the hospital a week later by the school counselor, Mr. Ortiz tried to commit suicide by consuming a large amount of prescription medication. *Id.* at ¶¶ 5, 8. He was readmitted to the hospital and was released approximately two weeks later under a mixed drug regimen of antidepressants, mood stabilizers, and anti-psychotics. *Id.* at ¶ 9. This cocktail of prescription drugs "overwhelmed" Plaintiff and left him in a condition where he "wasn't himself" and "couldn't think straight." *Id.* at ¶ 10. This behavior did not abate until weeks later when his psychiatrist had the opportunity to correct his prescription drug regimen. *Id.* at ¶ 12.

Between March 8, 2010 (when Mr. Ortiz was escorted from school premises for suicidal ideation and checked into the psychiatric ward by a fellow school employee) to April 5, 2010 (when he returned to work under the influence of an extremely potent prescription drug cocktail), Mr. Ortiz's employer made no attempt to communicate with him regarding his heath, his treatment, his safety, or any accommodation that would facilitate his safe and effective return to work. *Id.* at ¶ 13. Had it done so, Mr. Ortiz would not have reported to work on April 5, 2010 under the influence of an overly-aggressive prescription drug regimen; he would not have reported to work on that day carrying a pack of Mike's Hard Lemonade and a raw steak, and he

never would have undergone "Reasonable Suspicion" testing that resulted in his eventual termination. *Id.* at ¶ 3. His previous seventeen years of service establish that fact.

Plaintiff filed charges against Defendant with the EEOC on June 29 and September 27, 2010. Defendant's Local 56.1 Statement of Undisputed Facts ("SOF") ¶¶ 41, 43. The facts underlying Plaintiff's EEOC discrimination and retaliation charges stem directly from Defendant's failure to accommodate Plaintiff's disability.

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and it may be granted in favor of the non-movant. FED. R. CIV. P. 56(a), (f)(1); *see, e.g.*, *State Auto Prop. & Cas. Ins. Co. v. Kincaid*, No. 09-3146, 2011 U.S. Dist. LEXIS 9505 (C.D. Ill. Feb. 1, 2011) (granting summary judgment for non-movant). "In an employment discrimination case, as in any case, 'we must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party.'" *Majors v. GE Elec. Co*., 714 F.3d 527, 532 (7th Cir. 2013).

### II.    PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM IS RELATED TO AND GROWS OUT OF HIS EEOC CLAIMS

Absolutely nothing has changed since the Court "conclude[d] that plaintiff has exhausted his administrative remedies" and rejected the exact same argument that Defendant rehashes here. Order at 9. The Board presents no new argument, no new facts, and no intervening change in case law – nothing at all that would justify this Court's departure from the law of the case that it established months ago. Order at 9. *See, e.g.*, *Dear v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009) (stating that the court must decide as a matter of law whether the claims at issue are within the scope of the administrative charges before the court moves on to the merits). Because the issue has been decided and Defendant presents no new argument or change in law, Plaintiff

hereby incorporates the opposition to the motion to dismiss, attached as Exhibit A. For the Court's convenience, the integral points are discussed again below.

The starting point for determining the permissible scope of the Plaintiff's judicial complaint is the administrative charges and investigations. *Babrocky*, 773 F.2d at 863 (citations omitted). "A limited EEOC investigation is not necessarily fatal to a complaint that contains allegations like or reasonably related to the EEOC charge but that the EEOC, for some reason or another, failed to investigate." *Id.* at 863 nt. 2. All claims of discrimination are cognizable if they are "like or reasonably related to the allegations of the charge and grow[] out of such allegations." *Jenkins*, 538 F.2d at 167. "The standard is a liberal one in order to effectuate the remedial purposes of Title VII, which itself depends on lay persons, often unschooled, to enforce its provisions." *Babrocky*, 773 F.2d at 864 (citations omitted). In *Jenkins*, the Seventh Circuit emphasized this point:

> Complainants to the EEOC are seldom lawyers. To compel the charging party to specifically articulate in a charge filed with the Commission the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected …

538 F.2d at 167 (internal citation and quotation omitted).[4] *See also Love v. Pullman Co.*, 404 U.S. 522, 527 (1972) (stating "[T]echnicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process."). Thus, the test for determining whether an EEOC charge encompasses the claims in a complaint "grants the Title VII plaintiff significant leeway . . . ." *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th

---

[4] The reasoning of *Bultemeyer* is similar and compelling: "Bultemeyer may not have known that FWCS expected him to ask specifically for a 'reasonable accommodation.' But properly participating in the interactive process means that an employer cannot expect an employee to read its mind and know that he or she must specifically say 'I want a reasonable accommodation,' particularly when the employee has a mental illness." 100 F.3d at 1285.

Cir. 1994). "['Scope of the charges'] cases are narrowly based on their facts and not easy to reconcile." *Kristufek v. Hussman Foodservice Co.*, 985 F.2d 364, 368 (7th Cir. 1993).

Plaintiff's case here is analogous to *Jenkins*, *Kristufek*, and *Babrocky*—all cases in which the courts held that plaintiffs alleged facts in the EEOC charges that were sufficient to support additional legal theories in later judicial complaints. *Jenkins* is the seminal EEOC "scope of the charges" case by an en banc panel of the Seventh Circuit Court of Appeals. The court quoted the Fifth Circuit with approval: "We decline to hold that the failure to place a check mark in the correct box is a fatal error. In the context of Title VII, no one—not even the unschooled—should be boxed out." *Id*. at 168.

Like the plaintiff in *Jenkins*, Plaintiff here provided facts in the EEOC charges that provide the basis of his failure to accommodate claim. He stated that Defendant was aware of his disability,[5] thus triggering Defendant's duty to engage in the interactive process and discuss reasonable accommodation with Plaintiff.[6]

Plaintiff's failure to accommodate claim is unmistakably linked to the EEOC discriminatory termination claim; it is simply a matter of stepping backwards in the causation chain. Here, the "discovery" of a failure to accommodate claim stems from a simple inquiry:

> Why did an employee who had worked for seventeen years at Sawyer School with no problems suddenly show up to work one day, after a multi-week psychiatric hospital stay, slurring his words, carrying a raw steak, and allegedly testing positive on a Breathalyzer test?

A good faith investigation of the question above inevitably reveals the facts supporting Plaintiff's failure to accommodate claim: he has a disability (severe depression); his employer knew he had a disability and knew of its effect on Plaintiff at the time (prescription treatment,

---

[5] SOF ¶¶ 41, 43.
[6] *See* Section IV, *supra*.

suicide attempt, and hospital stays); and his employer affirmatively avoided any discussion of reasonable accommodation with Plaintiff before he was allowed to return to work.

The two cases relied upon by Defendant, *Kaplan* and *Green*, are both distinguishable. *Green* and *Kaplan* involve a different kind of failure to accommodate legal theory, and neither involved the intertwining correlation of EEOC facts and complaint claims that is present in this case. *Green* involved a plaintiff who suffered various physical ailments due to a severe automobile accident. *Green*, 197 F.3d at 895. She was terminated from her employment position for allegedly taking twenty hours of unapproved overtime and manipulating her employment history computer records to give herself additional vacation allowances, more than three years earlier retirement, and a seniority advantage over twenty-five other employees. *Id*. at 896. In affirming the district court's dismissal of plaintiff's discrimination claim, the Seventh Circuit reasoned that the facts underlying plaintiff's failure to accommodate claim had nothing at all to do with the facts underlying her discriminatory termination claim. *Id*. at 898. Here, in contrast, Plaintiff's failure to accommodate claim grows out of the same set of events alleged in the EEOC claims and there is a causal connection between the EEOC facts and the court claim.

Similarly, in *Kaplan*, the plaintiff filed charges with the EEOC alleging discrimination based on retaliation and disability. 2011 U.S. Dist. LEXIS 68762, at *4. In her judicial complaint, plaintiff alleged that she had made numerous express requests for accommodation, in the fall of 2006, spring of 2007, May 2007, September 2007, December 2007, and January 2008. *Id*. at *10. None of these allegations were included in plaintiff's EEOC charge. *Id*. Plaintiff's case here is distinguishable from *Kaplan* because Plaintiff's theory of liability does not entirely rely on allegations that he made an *express* request for accommodation as was the case in

*Kaplan*. Therefore, unlike *Kaplan*, there is no contradiction between Plaintiff's EEOC charges and his judicial complaint.

### III. PLAINTIFF IS A QUALIFIED INDIVIDUAL UNDER THE AMERICANS WITH DISABILITIES ACT

Whether a person is a "qualified individual with a disability" is a two-part inquiry. *Hamm v. Exxon Mobil Corp.*, 223 Fed. Appx. 506, 508 (7th Cir. 2007) (citation omitted); 29 C.F.R. § 1630.2(m). First, the court must determine whether "the individual satisfies the prerequisites for the position[.]" *Id.* Second, if the individual satisfies the position's prerequisites, a court must then consider "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id.*

It is undisputed that Plaintiff satisfies the first requirement; Defendant admits that Mr. Ortiz was a valuable and contributing member of the Sawyer School community for seventeen years leading up to the incident that ultimately resulted in his termination in May 2010. SOF ¶ 58. Plaintiff also satisfies the second prong of the "qualified individual with a disability" analysis. Mr. Ortiz routinely accomplished the essential functions of his position while under a stabilized prescription drug regimen for his disability. SOF ¶ 58. Indeed, Mr. Ortiz went above and beyond the "essential functions" of his position and successfully hosted two extracurricular clubs for Sawyer students. ASOF ¶ 4. Had the Board engaged in the interactive process and accommodated Plaintiff by requiring confirmation that his drug regimen be stabilized again before he returned to work, Mr. Ortiz would have returned to work as the same capable, qualified employee that he had been for the previous seventeen years. Thus, *with* accommodation, all available evidence suggests Mr. Ortiz could and would have continued to perform the essential functions of his position without issue.

Instead of engaging these facts and evidence, Defendant mischaracterizes the "qualified individual" legal standard under the ADA.  Defendant argues that Mr. Ortiz is not a qualified individual because he was unable to perform the essential functions of his job *without* accommodation, *i.e.*, Defendant claims that Mr. Ortiz is not a qualified individual because without accommodation, under the influence of a wildly over-aggressive prescription drug cocktail, Mr. Ortiz allegedly engaged in behavior that justified his termination.  This argument has no merit; it is a transparent effort to emphasize prejudicial and legally irrelevant facts.

Contrary to the position taken by the Board, the "qualified individual" analysis considers a hypothetical world in which the plaintiff *is* offered reasonable accommodation; that is what the language "*with* or *without* reasonable accommodation" means.  *See Hamm*, 223 Fed. Appx. at 508; *Bultemeyer*, 100 F.3d at 1284-85; 29 C.F.R. § 1630.2(m).   Defendant skips the "*with* reasonable accommodation*" analysis entirely.   The Board provides no evidence to rebut Plaintiff's evidence—seventeen years' worth of exemplary employment history—that Plaintiff could perform his essential job functions when his prescription drug regimen was stabilized.  *See Bultemeyer*, 100 F.3d at 1284-85 (plaintiff's satisfactory past history of employment showed, as a matter of law, that he satisfied the prerequisites of the position).

The case law cited by Defendant is distinguishable from the present case.  Not a single one of Defendant's cases addresses a scenario where, as here, the conduct leading to plaintiff's termination *would not have occurred* had a reasonable accommodation been granted.[7]  Instead, each of Defendant's cited cases involves claims that otherwise objectionable misconduct is

---

[7] *Budde* involved a claim that an employee could not be fired for drunken driving because he suffered from alcoholism.  *Budde v. Kane County Forest Pres.*, 597 F.3d 860, 862 (7th Cir. 2010).  *Palmer* involved a claim that an employee could not be fired for threatening to kill another employee because she suffered from schizophrenia.  *Palmer v. Circuit Court*, 117 F.3d 351, 352 (7th Cir. 1997).  *Pernice* involved a claim that an employee could not be fired for drug possession because he suffered from drug addiction.  *Pernice v. City of Chicago*, 237 F.3d 783, 787 (7th Cir. 2001).

excusable if the misconduct is caused by the plaintiff's disability. That is not Plaintiff's contention here. There is a meaningful distinction between: (1) arguing that misconduct is protected if it is the result of a disability (which is the plaintiffs' argument in the cases relied upon by Defendant – *Budde*, *Palmer*, and *Pernice*), and (2) arguing that Plaintiff's actions subsequent to Defendant's misconduct are legally irrelevant because they would *never have occurred* absent Defendant's preceding unlawful conduct. To illustrate the point, consider Defendant's position in the context of a hypothetical physical disability: Defendant is essentially arguing that it would be justified in firing a paraplegic employee for falling down on the job *after* the Defendant denied the paraplegic employee the use of a wheelchair. That is not the law. Had Defendant engaged in the interactive process with Mr. Ortiz when he was hospitalized for attempting suicide, it would have understood the recovery challenges facing Mr. Ortiz and he would have been safely out of school until his prescription drug regimen was normalized.

## IV. THE BOARD OF EDUCATION IS LIABLE FOR FAILING TO ACCOMMODATE PLAINTIFF EVEN THOUGH PLAINTIFF DID NOT EXPRESSLY REQUEST REASONABLE ACCOMMODATION

An employer on notice of an employee's mental disability has an obligation to engage in an interactive process to determine the reasonable accommodation that the employee needs. *Bultemeyer,* 100 F.3d at 1285-86 ("[P]roperly participating in the interactive process means that an employer cannot expect an employee to read its mind and know that he or she must specifically say 'I want reasonable accommodation,' particularly when the employee has a mental illness."). As the Seventh Circuit held in *Bultemeyer*, "[t]he employer has to meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help." 100 F.3d at 1285.

11

The employer has burden of initiating the interactive process when the employee is unable to do so. *Id.*; *see also* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation."). "Where notice is ambiguous as to the precise nature of the disability or desired accommodation, but it is sufficient to notify the employer that the employee may have a disability that requires accommodation, the employer *must* ask for clarification." *Sears*, 417 F.3d at 804 (emphasis added). "In other words, an employer cannot shield itself from liability by choosing not to follow up on an employee's requests for assistance, *or by intentionally remaining in the dark.*" *Id.* (emphasis added). "In a case involving an employee with mental illness, the communication process becomes more difficult. It is crucial that the employer be aware of the difficulties, and 'help the other party determine what specific accommodations are necessary.'" *Bultemeyer*, 100 F.3d at 1285.

Plaintiff's case here is analogous to the situations in *Bultemeyer* and *Sears*. Like the plaintiff in *Bultemeyer*, Plaintiff here suffers from a mental disability with symptoms and side effects[8] that prevented him from expressly specifying, at the only time it was necessary, the reasonable accommodation that he needed. Put simply, it is unrealistic to expect Mr. Ortiz— lying in a hospital, intent on killing himself, under the influence of at least four mixed prescription drugs—to self-diagnose his over-prescription and request more time off to allow for his personal psychiatrist to analyze and moderate the drug regimen prescribed by the hospital.

Like the *Bultemeyer* plaintiff with bipolar disorder and paranoid schizophrenia, Mr. Ortiz "was unable to articulate to [Defendant] that he wanted [Defendant] to accommodate his

---

[8] The ADA treats the side effects of treatment for a disability, such as the side effects of prescription drugs, as additional protected symptoms of a disability. *See Christian v. St. Anthony Med. Ctr.*, 117 F.3d 1051, 1052 (7th Cir. 1997).

disability[.]" *Bultemeyer*, 100 F.3d at 1284. Mr. Ortiz provided substantial and lengthy notice of his mental disability,[9] and his employer was on direct notice of his suicidal ideation and psychiatric ward check-in,[10] thus he indisputably provided the "indirect request" that was endorsed in both *Bultemeyer* and *Sears*. In those cases, the plaintiffs provided notes from their doctors identifying the plaintiffs' disabilities, but the notes did not identify specifically the accommodation that was necessary. *Bultemeyer*, 100 F.3d at 1282; *Sears*, 417 F.3d at 804. In Mr. Ortiz's case, he first told the Defendant about his disability in 1995 or 1996. ASOF ¶ 5. The school had records of his anti-psychotic drug prescriptions in his file—a file that Principal Robles admits she reviewed and was familiar with. *Id.* On one occasion, Mr. Ortiz's psychiatrist faxed Principal Robles to inform her that Mr. Ortiz was being checked into a psychiatric ward for his disability and the problems were severe enough that if he had refused, she would have had him involuntarily committed. *Id.* With Principal Robles' express approval, it was a school employee who took Mr. Ortiz from school premises and checked him into a psychiatric ward. *Id.* at ¶¶ 6-7. And it was the school's counselor that picked him up at the hospital after his first stay in March 2010. *Id.* at ¶ 5.

At her deposition, Principal Robles claimed that she never asked for details about Mr. Ortiz's problems and did not even inquire as to the specific reason why he needed to be escorted to the psychiatric ward on March 8, 2010 because of "health concerns." ASOF ¶ 13. Indeed, in her "supplemental Declaration" (which was submitted to contradict her own previous sworn testimony)[11] and the subsequent deposition, Principal Robles "corrected" her prior testimony by

---

[9] ASOF ¶ 5.

[10] ASOF ¶¶ 5-7.

[11] *See* Plaintiff's Local 56.1 Response to Defendant's Statement of Facts ¶ 18; *compare* ASOF Exhibit 1, Robles Tr. 22:6-11 (Q. So between the time when Tom O'Connell took David to the hospital and the time that he came back to the school and was exposed to reasonable suspicion testing, you did not speak to David Ortiz? A. Correct) and Exhibit 14 *to* SOF Exhibit C, Robles Tr. 143:8-15 (Q. I just have a

claiming that she spoke with Mr. Ortiz on April 2, shortly after his check-out from the hospital but before his return to work, and he allegedly told her he was okay to return to work. SOF ¶ 18. At the very least, this is a disputed issue of fact[12] (and credibility) that cannot be a basis of a grant of summary judgment in favor of Defendant. Moreover, even during this (newly remembered) call, Principal Robles insists that she never asked Mr. Ortiz how he was, why he had been gone for almost a month, or why he was now "okay" to return to work. ASOF ¶ 18. Her contradictory testimony (even if credited) only further highlights the pervasive "willful blindness" attitude that characterized the interaction between the Defendant and Mr. Ortiz when he was in his most helpless state. Defendant went to great lengths to avoid engaging Plaintiff on the subject of his disability. Under the *Bultemeyer* line of cases, on these facts, it is unacceptable for the Defendant to turn a blind eye to Mr. Ortiz's vulnerability after it was on notice of his disability, its symptoms, and his resultant hospital stay.

The facts underlying Plaintiff's liability case are uncontroverted; therefore, judgment on liability can issue to Plaintiff as a matter of law. To prevail on a claim of liability against the Defendant for Defendant's failure to accommodate, Plaintiff must prove show: "(1) [he] is a qualified individual with a disability; (2) the employer was aware of [his] disability; and (3) the employer failed to reasonably accommodate the disability." *Sears*, 417 F.3d at 797. Mr. Ortiz is a "qualified individual" because he can perform the essential functions of the job with reasonable accommodation, *i.e.*, when his medication is normalized.[13] He has seventeen years of exemplary

---

question. During the conversation that you and counsel were just talking about with Mr. Ortiz on April 2nd, did you tell Mr. Ortiz to come back to work on April 5, 2010? A. He told me that he was going to come back to work. He was well enough to come back.").

[12] *See* Plaintiff's Local 56.1 Response to Defendant's Statement of Facts ¶ 18.

[13] This accommodation is "reasonable" on its face, and Defendant does not argue otherwise; aside from the suicide attempt hospitalization, Mr. Ortiz has maintained a stabilized prescription regimen without needing additional time off. The *only* time this accommodation (*i.e.*, a short prescription drug stabilization period and a return to work note) is necessary is after post-suicide attempt hospitalization

service to put forward as evidence of this fact, and Defendant has no evidence to the contrary. Defendant concedes Mr. Ortiz has a mental disability. Def. Br. at 6 ("For the purposes of this motion, the Board does not dispute Plaintiff has a mental disability."). The evidence establishing that the Defendant was aware of Mr. Ortiz's disability is legion. *See* ASOF ¶ 5. Lastly, there is no dispute that the Defendant failed to reasonably accommodate Mr. Ortiz's disability. ASOF ¶ 13. It made absolutely no attempt to engage him in the interactive process even when it was clear that he could not initiate the discussion.

## CONCLUSION

Plaintiff's failure to accommodate claim is reasonably related to and grows out of the EEOC discrimination charges and Defendant is wrong as a matter of law that Plaintiff is not a "qualified individual" under the ADA. Further, there is no disputed fact going to the existence of Plaintiff's disability, Defendant's knowledge of Plaintiff's disability, or Defendant's failure to act. For the foregoing reasons, the Court should deny the Defendant's motion for summary judgment in its entirety and instead grant Plaintiff summary judgment on liability.

Dated: May 30, 2014                                 Respectfully submitted,


                                                    By: /s/ Kenneth A. Wexler
                                                         Kenneth A. Wexler
                                                         Justin N. Boley
                                                         Wexler Wallace LLP
                                                         55 W. Monroe Street, Suite 3300
                                                         Chicago, IL 60603
                                                         (312) 346-2222 – Telephone
                                                         (312) 346-0022 – Facsimile
                                                         kaw@wexlerwallace.com
                                                         jnb@wexlerwallace.com

                                                         *Counsel for Plaintiff David Ortiz*

---

where it is virtually guaranteed that psychiatric treatment will include an altered prescription drug regimen.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing ***Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment*** to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system. Those attorneys not registered with the Court's electronic filing system will be served by U.S. Mail this 30th day of May, 2014.

/s/ Kenneth A. Wexler

16